IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| Harvey Fair, #12649-014, | ) | C/A No.: 9:09-3118-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Mr. Holland, Counselor; Mary Mitchell, | ) | **REPORT AND RECOMMENDATION** |
| Warden; Mr. Acosta, Associate Warden; | ) | |
| Mr. Collins, Captain; Mr. Kelso, Lt. SIS; | ) | |
| Mr. Neil, Unit Manager and Mr. Dobbins, | ) | |
| Asst. Food Administrator, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown

Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff, an inmate with

the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named

Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

---

[1] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Harlow and progeny indicate that case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. Farmer v. Brennan, 511 U.S. 825 (1994). See also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir. 1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

– 1 –



Fed.R.Civ.P. on August 5, 2010. As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on August 9, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition on September 14, 2010, as well as a "declaration" on September 17, 2010. The Defendants filed a reply memorandum on September 24, 2010.

The Defendants' motion is now before the Court for disposition.[2]

## Background and Evidence

Plaintiff alleges in his verified complaint[3] that he is an inmate confined at the Federal Correctional Institution in Edgefield, South Carolina (FCI Edgefield).[4] Plaintiff alleges that beginning on or about July 21, 2009, and continuing through November 2009, the named Defendants conspired to punish him for reporting that the Defendant Dobbins, an assistant food administrator, was using a BOP credit card for illegal purchases. Plaintiff further alleges that Dobbins "committed sexual misconduct by inappropriately touching the Plaintiff on his inner thigh with her hand . . . . Brushing her buttocks against the Plaintiff's crotch area . . . . [and] Squeezing the arms and shoulder

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[3] In this Circuit, verified complaints by <u>pro se</u> prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[4] Plaintiff is now confined at the Federal Correctional Facility in Petersburg, Virginia, and is no longer housed at FCI Edgefield. <u>See</u> Court Docket No. 28 [Change of Address Notice].



of the Plaintiff in violation of Program Statement 3420.09 pg. 8, b. (1)(2)." Plaintiff also alleges that Dobbins showed "preferential treatment and favoritism" toward another group of inmates in violation of another Program Statement, as well as in violation of his constitutional rights.

Plaintiff alleges that on or about September 19, 2009, he complained to the Defendant Kelso that Dobbins was sexually harassing him and committing "Governmental Fraud". Plaintiff alleges that he was thereafter admitted to administrative segregation on September 25 without being informed of the reason he was being placed in segregation, was not afforded a seven day segregation review, nor given a detention order until nearly a month later, all in violation of prison policy as well as his constitutional rights. Plaintiff alleges that he filed a BP8 [Informal Administrative Remedy] with the Defendant Neil, the unit manager, on October 6, 2009, claiming that his placement in administrative segregation was in retaliation for complaining about Dobbins, and that he requested a response to his BP8 "several times" in October and November 2009, but was denied a response. Plaintiff alleges that he then requested a BP9 but was denied that request as well, following which Plaintiff alleges he told Neil as well as the Defendant Holland (correctional counselor) that they were violating his right of access to the administrative remedy process and his constitutional rights.

Plaintiff also alleges that (at the time of the filing of the complaint) he was being kept in a two man cell with less than seventy-five square feet even though BOP policy requires a cell with two inmates to have at least one hundred twenty-five square feet, and that as a result he has suffered "emotional trauma, depression, elevated high blood pressure, and increased tension, stress, and listlessness." Plaintiff also complains that he was made to sleep in a top bunk for nearly a month, although he was medically assigned to a bottom bunk, and that he suffered severe back pains because of having to climb up and down to the top bunk. Plaintiff alleges that on or about October 21, 2009,



he fell off of the top bunk while trying to climb down, injuring is left thumb, and that he was not finally assigned to a bottom bunk until on or about October 22, 2009. Plaintiff seeks monetary damages. <u>See</u> <u>generally</u>, <u>Plaintiff's Complaint</u>.

In a "declaration" attached to the complaint, Plaintiff asserts that he notified the Defendants Mitchell, Neil, and Holland that he had not received a response to his BP8, and that he also repeatedly requested a BP9, BP10 and BP11, all of which requests were denied, and that as a result of the Defendants' actions he has been under excessive and constant stress that has elevated his blood pressure, resulting in psychological and emotional distress as well as damage to his eyesight, kidneys and heart. <u>See</u> <u>Plaintiff's Declaration</u>.

The Defendants have submitted several affidavits and exhibits in support of summary judgment in this case. For purposes of this opinion, the undersigned has only recited the evidence submitted with respect to Plaintiff's exhaustion of his administrative remedies, as that evidence is dispositive of this case. First, the Defendants have submitted an affidavit from Jenifer Hollett, who attests that she is a senior attorney with the BOP and provides legal assistance to staff at the federal prisons in South Carolina. Hollett attests that from May 28, 2009 through April 28, 2010, Plaintiff was incarcerated as FCI Edgefield. Hollett attests that BOP inmates may challenge almost any aspect of their confinement through the administrative remedy process as follows:

> They generally file an informal request for relief with their Correctional Counselor. The matter is investigated and the inmate is provided a response. Thereafter, if dissatisfied with the response, the inmate may file a formal request for administrative remedy with the Warden. If the inmate is dissatisfied with the Warden's response, he may file at the regional level. If dissatisfied with the regional response, he may file at the national level. There are specific time periods set out in which inmates can file their grievances under this administrative process. These time frames are set out in federal regulation. <u>See</u> 28 C.F.R. § 542.14(a)(20 calendar days from date of incident for institutional grievance); § 542.15(a)(20 calendar days of receipt of



Warden's response to file regional appeal, and 30 calendar days of receipt of regional appeal to file national appeal).

All formal requests are logged into the national data base and are given a unique identifying number. An extension is added to the number which denotes the level at which the claim is filed. Thus, subsequent appeals of an issue will have the same identification number with a different extension identifying the level where filed. The extension "-F1" indicates the filing was at the institutional level. The extension "-R1" indicates the filing was at the regional level. The extension "-A1" indicates the filing was at the national level. If an appeal is rejected and re-filed at the same level, perhaps correcting the identified deficiencies, then the number will change but the letter will remain the same. For example, the extension "-R2" indicates the appeal was rejected at the regional level once and the inmate has re-filed, presumably after correction of the noted deficiencies.

All attempts to file a formal request, even if rejected for procedural reasons are logged in the national data base . . . . informal requests for remedy are not logged into the national data base.

Hollett attests that she has reviewed the administrative remedy log which details all formal requests filed by the Plaintiff, a copy of which is attached to her affidavit as Attachment 1.

Hollett attests that this record indicates that Plaintiff has filed numerous grievances throughout his incarceration, but that he did not file timely grievances concerning the issues raise in this litigation, nor has he exhausted the grievances he did file. Hollett notes two specific grievances which Plaintiff has filed relating to the issues raised in this complaint. The first (No. 574867-R1) was submitted to the Southeast Regional office on January 29, 2010. This grievance was rejected for failure of the Plaintiff to initiate his claim at the institutional level, with Plaintiff being directed to file his claim at the institutional level. See Attachment 2 to Hollett Affidavit. Hollett attests that a review of the administrative remedy log (Attachment 1) reflects that Plaintiff made no attempt to file this grievance at the institutional level. However, Plaintiff did file a second administrative grievance on February 8, 2010 (No. 576084-F1), alleging that he had been sexually assaulted by the Defendant Dobbins and



placed in segregation in retaliation for complaining about this conduct. Plaintiff received a response from the Warden on February 26, 2010, he appealed this grievance to the regional director on March 18, 2010, and received a response denying his request on May 6, 2010. Plaintiff thereafter appealed this grievance to the national level on June 1, 2010, where it was rejected for procedural issues. Plaintiff then corrected those issues and resubmitted the grievance on July 13, 2010, where the matter is currently pending. See generally, Hollett Affidavit, with attached exhibits.

The Defendant W. C. Holland has also submitted an affidavit wherein he attests that he is a correctional counselor at FCI Edgefield. Holland attests that one of his duties involves providing inmates with various forms in connection with the administrative remedy program. Holland attests that he maintains a log documenting informal resolution attempts under the administrative remedy process, and that a true and correct copy of the relevant portion of that log (redacted to only show entries involving the Plaintiff) is attached to his affidavit as Attachment 1. Holland attests that an inmate who wishes to access the prison grievance procedure will contact him in order to receive the proper forms, which begins with the inmate's attempt at informal resolution. The inmate will ask him for a form, which he provides and makes a notation in the log that the form was provided. The inmate will then complete the complaint section of the form and return the document to him, and he will then contact the appropriate people in order to investigate the allegations and to get a response for the inmate. Holland attests that once he gets the necessary information, he forwards the document to the Unit Manager for review and signature, and that once he gets the form back, he will provide it to the inmate and will note the same in his log book. Holland attests that if the inmate is dissatisfied with the response, he can then ask for a "BP-9", which is the form used to file a formal complaint to the Warden. Holland attests that he will then



provide that document and make a notation in his log. When the inmate returns the completed form, along with his informal resolution documentation, he [Holland] then delivers this material to the administrative remedy clerk.

Holland attests that his log reflects that Plaintiff did not ask him for any administrative grievance forms until approximately November 18, 2009. Holland attests that when Plaintiff returned this form to him, it contained several distinct issues concerning a special housing unit and mail delivery. Holland attests that he then advised Plaintiff that he needed to submit separate forms for each of these issues, but that Plaintiff did not wish to do so and did not ask for additional forms. Holland attests that Plaintiff did not ask him for any additional grievance forms until on or about January 13, 2010. Holland attests that he has no record of any informal resolutions submitted by the Plaintiff on or about October 6, 2009, and that he was not even Plaintiff's counselor until October 14, 2009, when he (apparently) took over from James Johnson.

Holland further attests that the Unit Team maintains a log that documents various receipts, rejection notices and administrative remedy responses that are delivered to inmates, a true and correct copy of relevant portions of which are attached to his affidavit as Attachment 2. Holland attests that he had reviewed this delivery log and finds no grievance, remedies, receipts or rejection notices being delivered to the Plaintiff from September 25, 2009 until February 10, 2010, when he delivered a rejection notice to the Plaintiff from the Regional Office for remedy No. 574867-R1.

Holland attests that he had several conversations with the Plaintiff about grievances, that he provided grievance forms to the Plaintiff every time Plaintiff asked for one, and that Plaintiff did not ask him for a form to complain about the issues in this litigation until January 2010. See generally, Holland Affidavit, with attached exhibits.



The Defendants have also submitted an affidavit from James Johnson, who attests that he is a correctional counselor at FCI Edgefield. Johnson attests that he made regular rounds in the SHU to address issues inmates might have while in that unit, and maintained a log documenting informal resolution attempts under the administrative remedy process, a true and correct copy of the relevant portions of which are attached to his affidavit as Attachment 1. Johnson further attests to the same administrative remedy procedure as is set forth by Holland in his affidavit. Johnson attests that sometimes during the investigation, it will become evident that the matter is resolved, and that in such a case he will discuss the matter directly with the inmate who may indicate that he is satisfied. The prison will then stop the process. Johnson attests that in such a case he makes the appropriate notation in his log book and does not take any further action in the matter.

Johnson attests that his log reflects that Plaintiff only asked for one informal administrative remedy form while he was housed in the SHU in late 2009, and that he provided Plaintiff with that form on October 5, 2009. Johnson attests that Plaintiff completed the form, complaining that the Defendant Kelso was retaliating against him, and he entered this in his log book. Johnson attests that he then began his investigation by contacting Kelso, who stated that he had spoken with the Plaintiff and resolved the issues in the BP-8. Johnson attests that he then visited Plaintiff and asked him if he had spoken to Kelso, and that Plaintiff indicated he had and that everything was ok. Johnson attests that he asked the Plaintiff if the matter was resolved to his satisfaction, and Plaintiff said that it was. Johnson attests that he then noted that the matter had been informally resolved in his log book as of the date he spoke with the Plaintiff (October 15, 2009), and did not continue processing the BP-8. Johnson attests that Plaintiff never asked him for a BP-9 form to continue the grievance process with respect to this BP-8, and that although he made regular rounds



past Plaintiff's cell in the SHU even after he was assigned to another counselor (Holland), Plaintiff never asked him about this BP-8 or asked for any documentation as to the informal resolution. <u>See generally</u>, <u>Johnson Affidavit</u>, with attached exhibits.

In his memorandum opposing summary judgment, Plaintiff concedes that he is "very familiar" with the BOP's administrative remedy process and that he has used it several times throughout his incarceration. Plaintiff argues that with respect to the claims set forth in this lawsuit, the "record clearly reflects that the Plaintiff attempted to gain access to the administrative remedy process and was denied not only by FCI Edgefield, but was also denied by the Bureau's Regional office", citing to the numerous exhibits attached to his memorandum in opposition. However, the undersigned is constrained to note that all of the administrative remedy documents Plaintiff has attached to his response post date the filing of this lawsuit except for one document, with that document (an informal resolution form) being dated November 19, 2009, ten days *after* the date on Plaintiff's complaint.

In his "declarations" filed September 17, 2010, Plaintiff contends that he requested a BP-9 so that he could pursue the matter raised in his October 5, 2009 BP-8, but that his request was "repeatedly denied by counselor Holland".

## **<u>Discussion</u>**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party



must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Defendants argue in their motion, inter alia, that this lawsuit should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997(e)(a), federal prisoners are required to exhaust their administrative remedies prior to filing civil lawsuits. See Booth v. Churner, 532 U.S. 731 (2001); Jones v. Bock, 549 U.S. 199, 211 (2007)["Exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and . . . unexhausted claims cannot be brought in Court"]; see also Porter v . Nussle, 534 U.S. 516, 524 (2002)[exhaustion required for all actions brought with respect to prison conditions]. Hence, before Plaintiff could bring this lawsuit, he was required to first exhaust available prison remedies.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, supra. To meet this burden, the Defendants have submitted several affidavits as well as documentary evidence (including logs and other records maintained by the BOP) showing that Plaintiff did not exhaust the BOP's administrative remedy process regarding any of the allegations set forth in the complaint prior to filing this lawsuit. Further,



while Plaintiff's own exhibits (attached to his filing) reflect that he has pursued administrative exhaustion of these claims since the filing of this lawsuit, none of these exhibits show an exhaustion of Plaintiff's claims prior to the filing of this lawsuit. This evidence is sufficient to meet the Defendants' burden of establishing Plaintiff's failure to exhaust his administrative remedies. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"]; see also Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]; Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.].

Finally, while Plaintiff states in his complaint and in his "declarations" that he wanted to pursue his October 2009 BP-8 filing, but that Holland would not give him the BP-9 form to do so, thereby frustrating his attempts at exhaustion, in light of the substantial evidence provided by the Defendants, this Court is not required to accept Plaintiff's general and conclusory assertions as sufficient evidence to deny the Defendants summary judgment. Morgan v. Churchs Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) [The Court is not required to "accept as true legal conclusions or unwarranted factual inferences"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810,818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range or reasonable probability" and that



["[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].  Plaintiff cannot avoid summary judgment by simply making the claim, contradicted by substantial evidence to the contrary, that he attempted to exhaust his administrative remedies but was prevented from doing so. If this were the standard by which such assertions were judged, then prison officials would never be able to obtain summary judgment against a prison inmate for failure to exhaust administrative remedies.  Cf. Harvey v. City of Philadelphia, 253 F.Supp.2d at 827, 829 (E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative remedies]; see also Spruill v. Gillis, 372 F.3d 281, 223 (3rd. Cir. 2004)[documents relating to issue of exhaustion may be considered when considering a motion to dismiss]; Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court-or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)).

Therefore, based on the evidence submitted, the Defendants are entitled to summary judgment, and this case should be dismissed.  Booth, 532 U.S. at 741; Hyde, 442 S.E.2d at 583; 42 U.S.C. § 1997e(a).

### Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion be **granted**, and that this case be **dismissed**, without prejudice, for failure of the Plaintiff to exhaust his administrative remedies.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 16, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

